IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>STEVE SCHMIDT and )<br>DARREN ULATOWSKI, )<br><br>Defendants. ) | INDICTMENT **SEALED**<br><br>Case No. 11 CR 132 wmc<br>18 U.S.C. § 1343<br>18 U.S.C. § 1341<br>18 U.S.C. § 1956(h)<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982<br>28 U.S.C. § 2461(c) |

THE GRAND JURY CHARGES:

<u>COUNTS 1-15</u>

<u>Background</u>

1.     At times material to this indictment:

(a)     "It's Your Party" (IYP) operated as a limited liability corporation in Madison, Wisconsin.  IYP designed and produced large entertainment events for corporate clients and individuals.  IYP offered a wide variety of services, including: theme events (e.g., Old West, Paris, Hollywood, Mardi Gras, Holidays); interactive entertainment (e.g., casino nights, game show, murder mystery); indoor and outdoor attractions (e.g., mini golf, carnival games, super slide); and music and entertainers (e.g., DJs, bands, magic, fortune tellers, stilt walkers). IYP started in 1986 in Madison and has been solely owned by one individual owner who ran IYP as the President of the company.

(b)      Defendant STEVE SCHMIDT worked at IYP from 1997 to September 21, 2007.  SCHMIDT started at IYP as a freelance floral designer.  IYP initially paid SCHMIDT as an independent contractor through his company "Design Circle."  On January 1, 2006, IYP began paying SCHMIDT as a salaried employee of IYP.  SCHMIDT's duties at IYP increased over the years.  SCHMIDT worked with IYP's owner as a sales account representative and assisted in making sales to clients. SCHMIDT also worked as a project manager and designer on IYP events dealing with fresh floral goods.  SCHMIDT's duties expanded at IYP to include human resources and payroll.  In that capacity, SCHMIDT handled the issuance of payroll checks to IYP staff.  Defendant SCHMIDT had access to IYP's computer accounting system for processing the payroll checks.  SCHMIDT also had access to the owner's signature stamp for signing the IYP payroll checks.

(c)      Defendant DARREN ULATOWSKI owned and operated "House of Flowers" (HOF) in Verona, Wisconsin.  ULATOWSKI owned HOF since 2000.  HOF operated as a combined floral shop and gift shop that offered floral designs and arrangements by American Institute of Floral Design (AIFD) licensed designers.  HOF sold fresh floral, plants, dry floral, and silk products, as well as gift store items including: gift baskets, fruit baskets, holiday decorations, candles, jewelry, home-made cards and gourmet food items.  Defendant SCHMIDT helped ULATOWSKI manage HOF's finances, and worked closely with HOF's bookkeeper and HOF's corporate banker.  SCHMIDT also helped ULATOWSKI manage HOF's gift store, and helped out

2

at its floral store during major holidays.

(d)     The defendants held elaborate parties at their homes.  These were annual theme parties for family and friends that included: an Easter Brunch and a White Party held on the labor day holiday weekend.  The defendants routinely used props and personnel from IYP to stage and staff these parties.

### Scheme To Defraud

2.     During the period beginning in or about 2003 and continuing to on or about September 21, 2007, in the Western District of Wisconsin, and elsewhere, the defendants,

### STEVE SCHMIDT and
### DARREN ULATOWSKI,

knowingly and with the intent to defraud, devised and participated in a scheme to defraud IYP.

3.     It was part of the scheme to defraud that the defendants used a variety of methods to embezzle money and products, and to misuse property and personnel from IYP for their own personal purposes, which included, among other things, the funding of HOF in order to keep it solvent and operational.  The defendants disguised and concealed their conduct by: (a) lying to and misleading IYP staff about their actions; (b) creating false IYP payroll summary reports that were submitted to IYP's owner; (c) miscoding the expenses in the IYP General Ledger; and (d) using the IYP owner's signature stamp to sign unauthorized payroll and accounts payable checks.

4.     It was further part of the scheme to defraud that the defendants used the

3

IYP corporate credit card issued to defendant SCHMIDT to make unauthorized purchases of products and services.  These charges included, among other things, the following: (a) payments for personal items (including Christmas presents for friends, party presents for guests at the defendants' 2007 White Party, and home landscaping expenses for defendant SCHMIDT's home); (b) travel and lodging expenses for a trip to Texas in March 2007 for floral design school for defendant SCHMIDT; (c) registration, travel and lodging expenses for a trip to Washington, D.C. in July 2006 for both defendants to take the AIFD professional accreditation test; (d) travel and lodging expenses for a trip to Palm Desert, California, in July 2007 for both defendants for the AIFD yearly symposium , as well as defendant ULATOWSKI's induction into the AIFD, and defendant SCHMIDT's accreditation re-test; (e) registration expenses for both defendants and other HOF employees for a May 2007 buying trip to Chicago to purchase gourmet food inventory for the HOF gift store; and (f) purchases of outdoor home and garden products for HOF.

     5.     It was further part of the scheme to defraud that defendant SCHMIDT concealed his fraudulent actions with the IYP corporate credit card by: (a) lying to IYP staff when questioned about the charges on the credit card by indicating that IYP's owner had approved the charges, or lying by saying SCHMIDT would repay IYP by deducting the money from his paycheck; (b) refusing to provide IYP staff with a copy of the credit card receipts showing what the charges were for; and (c) miscoding the expenses on the credit card statement as legitimate IYP expenses such as supplies.

6.      It was further part of the scheme to defraud that the defendants misused IYP property and staff by using these resources for events that were disguised by the defendants as IYP-contracted events but were, in reality, unauthorized side deals conducted by the defendants.  These events included three weddings for friends and family.  The defendants created fake IYP contracts to make it appear as if the events were being handled by IYP.  The defendants used IYP's credit line with vendors to purchase goods and services for these non-sanctioned events and had the bills sent to IYP for payment.  The defendants deeply discounted IYP's fee in one fake contract indicating it was a "donation" by IYP to the client.  In one instance, defendant SCHMIDT had a wedding client make the check for the remaining IYP fee payable directly to SCHMIDT, and not IYP.

7.      It was further part of the scheme to defraud that the defendants diverted products from IYP to HOF.  The diversion was executed in a number of different ways. With fresh floral products, defendant SCHMIDT would either: (a) over order product for an IYP fresh floral event and divert the excess fresh floral to HOF; or (b) order product exclusively for HOF and have it delivered directly to HOF.  With dry floral products and gift shop inventory, both defendants ordered product for HOF using IYP's credit line and had the product billed to IYP, not HOF.  The defendants also used IYP's warehouse in Fitchburg to store HOF's inventory, including product paid for by IYP but used by HOF.  Shortly before defendant SCHMIDT's firing on September 21, 2007, the defendants, and SCHMIDT's personal assistant, removed the HOF inventory

5

from the IYP warehouse and stored it at the defendants' homes.

8.     It was further part of the scheme to defraud that defendant SCHMIDT misused his position as the IYP payroll clerk and human resources manager to secretly have IYP pay many of HOF's payroll expenses.  This fraud took a variety of forms. Among other things, SCHMIDT: (a) engaged in unauthorized hiring of staff at IYP, including a full-time personal assistant and contract floral designers who did work for HOF; (b) issued IYP payroll checks to these unauthorized hires, as well as to HOF employees (including defendant ULATOWSKI) for non-existent work, or for work done for HOF, not IYP; (c) issued IYP payroll checks to himself with inflated salary amounts that were, at times, almost double what defendant SCHMIDT was authorized to receive from IYP; (d) inflated payroll amounts by creating false payments for bonus pay, event pay, mileage reimbursements, and supplies reimbursements; (e) issued IYP payroll checks to IYP employees for work done at HOF; and (f) failed to maintain IYP timesheets and personnel files for himself and the IYP floral department staff.

9.     It was further part of the scheme to defraud that defendant SCHMIDT misused his access to the IYP computer accounting system to gain entry into the accounts payable system and to issue unauthorized accounts payable checks.  Among other things, SCHMIDT issued checks for: (a) payments of personal debts (including floral education-related expenses, and Christmas presents for friends); (b) purchases of products and services for personal use (including items used for parties hosted by the defendants at their homes); (c) registration, travel and lodging expenses related to HOF

buying trips in Chicago with defendant ULATOWSKI; (d) purchases of products for HOF (including dry floral, fresh floral, and gift shop inventory); (e) payroll expenses for HOF employees doing work for HOF, not IYP;  (f) purchases of products and services for non-IYP events that were planned by the defendants (including multiple weddings); (g) payments to the defendants' personal companies, including HOF and Design Circle, that provided no services to IYP, and provided no invoices to IYP documenting the reasons for the payments to these entities; and (h) check payments to defendant ULATOWSKI that were endorsed and directly signed over to defendant SCHMIDT.

10.     It was further part of the scheme to defraud that defendant SCHMIDT concealed his fraudulent actions with the IYP accounts payable system through a pattern of lies.  Among other things, SCHMIDT: (a) lied to IYP staff when questioned about the invoices and the purposes for the purchases; (b) misled third parties about defendant SCHMIDT's status at IYP by saying he was a co-owner of IYP, and that IYP and HOF were related entities and had shared facilities including a warehouse in Fitchburg; (c) miscoded the payments in the IYP General Ledger; (d) used the owner's signature stamp to sign the unauthorized accounts payable checks; and (e) inflated the payroll amounts on the payroll summary sheet submitted to IYP's owner.

11.     It was further part of the scheme to defraud that the defendants caused IYP to sustain losses of approximately $351,104 as a result of their fraudulent conduct.

12.     On or about the dates listed below, in the Western District of Wisconsin, the defendants,

STEVE SCHMIDT and
DARREN ULATOWSKI,

for the purpose of executing this scheme, knowingly used, and caused to be used, the

U.S. mails as follows:

| COUNT | DATE & MAILING |
|---|---|
| 1 | On or about December 21, 2006, in the Western District of Wisconsin, the defendants caused to be delivered by mail according to the directions thereon, invoice #187589 in the amount of $639.78 from Raz Imports in Arlington, Texas to Its Your Party, 6343 Nesbitt Rd., Madison, WI 53719. |
| 2 | On or about January 3, 2007, in the Western District of Wisconsin, the defendants caused to be delivered by mail according to the directions thereon, invoice #189068 in the amount of $250.10 from Raz Imports in Arlington, Texas to Its Your Party, 6343 Nesbitt Rd., Madison, WI 53719. |
| 3 | On or about January 12, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #054992 payable to Benz School, P.O. Box 9909, College Station, TX 77842, for $495. |
| 4 | On or about January 25, 2007, in the Western District of Wisconsin, the defendants caused to be delivered by mail according to the directions thereon, invoice #192656 in the amount of $353.49 from Raz Imports in Arlington, Texas to Its Your Party, 6343 Nesbitt Rd., Madison, WI 53719. |
| 5 | On or about January 29, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #055231 payable to Benz School, P.O. Box 9909, College Station, TX 77842, for $495. |
| 6 | On or about January 31, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #056197 payable to Chase Card Services, Cardmember Services, P.O. Box 94014, Palatine, IL 60094, for $2,646.82. |
| 7 | On or about February 8, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #054993 payable to AIFD, 720 Light Street, Baltimore, MD 21230, for $99. |

| 8 | On or about February 28, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #054996 payable to AIFD, 720 Light Street, Baltimore, MD  21230, for $1,600. |
|---|---|
| 9 | On or about March 21, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #055403 payable to NASFT, 2805 25th Avenue, P.O. Box 6578, Broadview, IL  60155, for $140. |
| 10 | On or about March 26, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #056597 payable to Chris Pauly, 3137 Maple Valley Drive, #112, Madison, WI  53719, for $578.05. |
| 11 | On or about April 25, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #056873 payable to BBJ Linen, 3685 Paysphere Circle, Chicago, IL  60674, for $85.93. |
| 12 | On or about May 2, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #056909 payable to Madison Party Rental, for $43.25. |
| 13 | On or about June 6, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #057040 payable to BBJ Linen, 3685 Paysphere Circle, Chicago, IL  60674, for $129.27. |
| 14 | On or about June 18, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #057096 payable to BBJ Linen, 3685 Paysphere Circle, Chicago, IL  60674, for $1,461.59. |
| 15 | On or about September 20, 2007, in the Western District of Wisconsin, the defendants caused to be placed in an authorized depository for mail matter, IYP check #057743 payable to BBJ Linen, 3685 Paysphere Circle, Chicago, IL  60674, for $457.60. |

(In violation of Title 18, United States Code, Sections 1341 and 2).

<u>COUNTS 16-21</u>

THE GRAND JURY FURTHER CHARGES:

1-11.   The Grand Jury realleges and incorporates Paragraphs 1 through 11 in
Count One as Paragraphs 1 through 11 of Counts 16-21.

12.     On or about the dates listed below, in the Western District of Wisconsin
and elsewhere, the defendants,

STEVE SCHMIDT and
DARREN ULATOWSKI,

for the purpose of executing this scheme, knowingly caused to be transmitted, by
means of wire communication in interstate commerce, the signals and sounds described
below for each count:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 16 | 12-24-06 | VISA credit card charge on IYP card number xxxx-4222 for $368.99 from TIVO in Alviso, CA |
| 17 | 2-19-07 | VISA credit card charge on IYP card number xxxx-4222 for 637.60 from Continental Airlines in Nashville, TN |
| 18 | 3-26-07 | Email from steve.schmidt@iyparty.com to Chris Pauly at capauly@gmail.com re: sending Pauly an IYP check paying Pauly for the time and miles spent to hook up TIVO for T.W. in Milwaukee |
| 19 | 4-12-07 | Email from steve.schmidt@iyparty.com to Darren Ulatowski at darrentod@aol.com re: editing a fake IYP contact for the B.F. wedding on 5-26-07 |
| 20 | 5-11-07 | VISA credit card charge on IYP credit card number xxxx-4222 for $735 from H. Potter in Spokane Valley, WA |
| 21 | 6-29-07 | VISA credit card charge on IYP credit card number xxxx-4222 for $324 from H. Potter in Spokane Valley, WA |

(In violation of Title 18 United States Code, Sections 1343 and 2).

## COUNT 22

### Background

1-11.   The Grand Jury realleges and incorporates Paragraphs 1 through 11 in

Count One as Paragraphs 1 through 11 of this count.

### Conspiracy

12.   From in or about 2003, to on or about September 21, 2007, in the Western

District of Wisconsin and elsewhere, the defendants,

STEVE SCHMIDT and
DARREN ULATOWSKI,

knowingly and unlawfully conspired with each other, and other persons known to the

Grand Jury, to commit and cause to be committed offenses against the United States,

namely, money laundering, in violation of Title 18, United States Code, Sections

1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

### Manner and Means

The manner and means by which the conspiracy was sought to be accomplished

included, among others, the following:

13.   It was part of the conspiracy that the defendants promoted the scheme to

defraud by paying themselves a portion of the fraud proceeds.  The defendants took

IYP checks payable to themselves and their entities (HOF and Design Circle) and

desposited these checks into their personal and business bank accounts at Anchor Bank

in the Western District of Wisconsin.   The defendants then engaged in a variety of

methods to pay themselves.  These included, among other things: (a) making split

11

deposits that included the withdrawal of cash from the deposit; (b) transferring funds between their business and personal accounts; and (c) issuing checks to themselves, or to each other, from the newly transferred funds in their accounts.

14. It was further part of the conspiracy that defendant ULATOWSKI signed over his IYP checks to defendant SCHMIDT, who deposited these funds into SCHMIDT's personal checking account at Anchor Bank.

15. It was further part of the conspiracy that the defendants attempted to avoid detection of their actions by converting a portion of their fraud proceeds from checks into cash.

16. It was further part of the conspiracy that the defendants attempted to conceal and disguise the source, nature, ownership and control of the fraud proceeds by transferring the proceeds between the defendants' various personal and corporate bank accounts at Anchor Bank. For example, defendant SCHMIDT transferred fraud proceeds deposited in his Design Circle bank account to his personal checking account at Anchor Bank. Defendant SCHMIDT also transferred fraud proceeds deposited in a HOF bank account to his personal checking account. Defendant SCHMIDT then used his personal checking account to transfer a portion of the proceeds to defendant ULATOWSKI. Defendant SCHMIDT also withdrew as cash a portion of the transferred proceeds.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objectives, the following

overt acts were committed in the Western District of Wisconsin:

17.     On or about February 9, 2007, the defendants caused an IYP check for $2924.60 payable to SCHMIDT to be deposited into SCHMIDT's checking account xx-3569.  Defendant SCHMIDT simultaneously withdrew $300 in cash from the money he deposited.

18.     On or about February 9, 2007, the defendants caused an IYP check for $675 payable to HOF to be deposited into HOF checking account xx-4949, which was then withdrawn entirely as cash by SCHMIDT.

19.     On or about February 24, 2007, the defendants caused an IYP check for $2749 payable to SCHMIDT, and an IYP check for $426.94 payable to ULATOWSKI (which was endorsed and signed over to SCHMIDT), to be deposited into SCHMIDT's checking account xx-3569.  Defendant SCHMIDT simultaneously withdrew $550 in cash from the money he deposited.

20.     On or about February 24, 2007, the defendants caused an IYP check for $465 payable to HOF to be deposited into HOF checking account xx-4949, which was then transferred to SCHMIDT's checking account xx-3569.

21.     On or about March 8, 2007, the defendants caused an IYP check for $2685.55 payable to SCHMIDT to be deposited into SCHMIDT's checking account xx-3569.  Defendant SCHMIDT simultaneously withdrew $680 in cash from the money he deposited.

22.     On or about March 8, 2007, SCHMIDT issued a check from his personal

checking account xx-3569 for $1505 payable to HOF.

23.     On or about March 15, 2007, ULATOWSKI issued a check from HOF checking account xx-3039 for $600 payable to ULATOWSKI.

24.     On or about March 21, 2007, the defendants caused an IYP check for $495 payable to HOF to be deposited into HOF checking account xx-3039.

25.     On or about April 24, 2007, the defendants caused an IYP check for $2851.86 payable to SCHMIDT to be deposited into SCHMIDT's checking account xx-3569. Defendant SCHMIDT simultaneously withdrew $400 in cash from the money he deposited.

26.     On or about May 2, 2007, the defendants caused an IYP check for $1675 payable to HOF to be deposited into HOF checking account xx-4949 which was then transferred to SCHMIDT's checking account xx-3569.

27.     On or about May 2, 2007, SCHMIDT issued a check from his personal checking account xx-3569 for $1600 payable to ULATOWSKI.

28.     On or about May 21, 2007, the defendants caused an IYP check for $565 payable to HOF to be deposited into HOF checking account xx-4949 which was then transferred to SCHMIDT's checking account xx-3569.

29.     On or about May 25, 2007, the defendants caused a check from the B.F. wedding for $1995.05 payable to SCHMIDT to be deposited into SCHMIDT's checking account xx-3569. Defendant SCHMIDT simultaneously withdrew $300 in cash from the money he deposited.

30.     On or about May 25, 2007, SCHMIDT issued a check from his personal checking account xx-3569 for $1,000 payable to ULATOWSKI.

31.     On or about June 26, 2007, the defendants caused an IYP check for $2500 payable to Design Circle to be deposited into SCHMIDT's Design Circle checking account xx-6128, which was then transferred to SCHMIDT's checking account xx-3569.

32.     On or about June 26, 2007, the defendants caused an IYP check for $2,100 payable to HOF to be deposited into HOF checking account xx-4949 which was then transferred to SCHMIDT's checking account xx-3569.

(All in violation of Title 18, United States Code, Section 1956(h)).

<u>FORFEITURE ALLEGATION</u>

1.     Upon conviction of one or more of the offenses alleged in Counts 1 though 21 of this indictment, the defendants,

STEVE SCHMIDT and
DARREN ULATOWSKI,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following:

a.     <u>Money Judgment</u> – a sum of money equal to $351,104 in United States currency, representing the amount of proceeds obtained as a result of mail and wire fraud.

2.     Upon conviction of the offense alleged in Count 22 of this indictment, the defendants,

STEVE SCHMIDT and

15

DARREN ULATOWSKI,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation, including but not limited to the following:

      a.    <u>Money Judgment</u> – a sum of money equal to $133,874 in United States currency, representing the amount of proceeds obtained as a result of money laundering.

      3.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants --

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, including but not limited to the following:

      a.    Funds held by the defendants in checking or savings accounts;

      b.    Funds held by the defendants in other financial accounts, trusts, money market accounts, investments shares, or negotiable instruments;

c.      Funds held by the defendants in pension, stock or bond accounts;

d.      Real property, such as houses, apartment buildings, time-share in

vacation properties, real property held for investment, or

condominiums owned by the defendants;

e.      Other assets owned by the defendants, including home furnishings,

paintings, pottery, or jewelry;

f.      Conveyances; and

g.      Each defendants' ownership interest in the inventory, real and

personal property of House of Flowers, Design Circle, and SS Bossy

Monkey.

(In violation of Title 18, United States Code, Sections 981(a)(1)(C), 982 and
Title 28, United States Code, Section 2461(c)).

A TRUE BILL

_____
PRESIDING JUROR

_____
JOHN W. VAUDREUIL
United States Attorney

Indictment returned: ___12/7/2011___

17